IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | | |
|---|---|---|
| Andrey F. Sakalosh, | ) | |
| | ) | Civil Action No. 7:20-4306-TMC-KFM |
| Plaintiff, | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| BMW Manufacturing Co., LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on the defendant's partial motion to dismiss (doc. 16). Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A), and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## BACKGROUND AND PROCEDURAL HISTORY

According to the plaintiff's *pro se* complaint, the plaintiff is a former employee of the defendant (doc. 1 at 3-5). The plaintiff alleges that the defendant discriminated against him based on his national origin due to "complain[ing] about [his] accent" (*id.* at 5). The plaintiff further alleges that the defendant discriminated against him based on disability due to his foot injury and "probable disability to lower back spine" (*id.*). The plaintiff contends that he disclosed the "probable disability arising from [the] injury to [his] lower spine," but that one of his supervisors "had [a] negative attitude to [him] and complained about [his] accent" (*id.*). Moreover, the plaintiff submits that the defendant retaliated against him when he told the defendant that he was going to file a complaint with the Equal Opportunity Employment Commission ("EEOC") (*id.*).

The plaintiff filed a complaint in the District of South Carolina on December 11, 2020, alleging national origin discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), disability discrimination under the Americans with Disabilities Act ("ADA"), and retaliation under Title VII (doc. 1 at 3-6). The plaintiff also attached a

statement to his complaint, in which he alleges that the defendant was negligent in failing to provide a non-toxic and non-discriminatory company culture, as well as for failing to follow Occupational Safety and Health Administration standards (doc. 1-1 at 1). The defendant filed a partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on April 6, 2021, arguing that the court should dismiss the plaintiff's disability discrimination claim under the ADA and retaliation claim under Title VII for failure to state a claim upon which relief may be granted (doc. 16). The plaintiff filed a response on May 12, 2021 (doc. 24), and, on May 18, 2021, the defendant filed a reply (doc. 27). The plaintiff filed a sur-reply on May 25, 2021 (doc. 28).

## APPLICABLE LAW AND ANALYSIS

### *Standard of Review*

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 531 (D.S.C. 2014) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Rule 8(a) sets forth a liberal pleading standard, which requires only a " 'short and plain statement of the claim showing the pleader is entitled to relief,' in order to 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "In assessing the sufficiency of a complaint, [the court] assume[s] as true all its well-pleaded facts and draw[s] all reasonable inferences in favor of the plaintiff." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (citing *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 570). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The court must liberally construe *pro se*

2

complaints to allow the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), and such *pro se* complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978).

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). The court may consider such a document, even if it is not attached to the complaint, if the document "was integral to and explicitly relied on in the complaint," and there is no authenticity challenge. *Id.* (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). *See also Int'l Ass'n of Machinists & Aerospace Workers v. Haley*, 832 F. Supp. 2d 612, 622 (D.S.C. 2011) ("In evaluating a motion to dismiss under Rule 12(b)(6), the Court . . . may also 'consider documents attached to . . . the motion to dismiss, so long as they are integral to the complaint and authentic.'") (quoting *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). Rule 12(d) states: "If on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

### *Retaliation*

In his complaint, the plaintiff alleges that the defendant retaliated against him based on him informing the defendant that he was going to file a complaint with the EEOC (doc. 1 at 6). The defendant argues that the plaintiff's claim for retaliation should be dismissed due to the plaintiff's failure to state a claim that is plausible on its face (doc. 16-1 at 6-7). Specifically, the defendant argues that, in a statement that the plaintiff attached to his complaint, the plaintiff admits that he did not inform the defendant that he was going to "talk to the EEOC" until after he was terminated from employment (*id.*). Thus, the defendant submits that it is implausible that the defendant terminated the plaintiff's employment in retaliation for filing a complaint with the EEOC (*id.*).

3

In his statement attached to the complaint, the plaintiff asserts that his official date of termination from employment with the defendant was October 9, 2019 (doc. 1-1 at 2). Also in this statement, the plaintiff discusses a management review meeting on October 23, 2019, regarding his termination, at which he told the management review personnel that "no matter what happens here at this review I will talk to EEOC" (*id.*). At this meeting, the plaintiff contends that "when they call[ed] [him] in, [he] was first given rights to present [his] statements and evidences what [he] know or think, before HR presented to three section leaders theirs evidences" (*id.*). The plaintiff contends that "[t]he fact that [he] have presented [his] statements first during this review . . . triggered probably discrimination" (*id.*).

The defendant interprets these assertions to mean that the plaintiff is admitting that, at this meeting on October 23, 2019, he disclosed to the defendant for the first time that he was going to file a complaint with the EEOC (doc. 16-1 at 6-7). However, a plain reading of these statements show that the plaintiff is merely discussing the order in which he and the human resources department presented their evidence regarding his termination at the meeting in question, not that this was the first time he mentioned filing a complaint with the EEOC. Further, in this attached statement, the plaintiff also alleges that on the day after a co-worker complained about him yelling at her and pushing her, which he believes was on September 27, 2019, he told two human resources representatives that he "will go to EEOC" (doc. 1-1 at 2, 5) (emphasis in original). The plaintiff contends that after he mentioned that he would go to the EEOC to the human resources representatives, he felt "like from this point they turned against [him] in retaliation" (*id.* at 5). Further, in his response to the defendant's motion, the plaintiff reiterates that prior to his termination date, he informed the defendant that he "will go to Administrative Governmental Authorities, EEOC and complain about discrimination . . . ." (doc. 24 at 7). Consequently, the undersigned finds that the plaintiff has not admitted that he did not mention filing a complaint with the EEOC until after his employment was terminated and therefore recommends that the district court deny the defendant's motion

to dismiss the plaintiff's retaliation claim for failure to state a claim that is plausible on its face.

### Disability Discrimination

In his complaint, the plaintiff also alleges a claim of disability discrimination under the ADA, alleging discrimination due to injuries to his foot and lower spine (doc. 1 at 5). The defendant argues that the plaintiff's claim for disability discrimination under the ADA should be dismissed because the plaintiff failed to exhaust his administrative remedies prior to filing this claim (doc. 16-1 at 4-6).

Before filing a civil action under the ADA in federal court, a plaintiff must first exhaust his administrative remedies by filing a timely charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a) (ADA adopts procedures set forth in § 2000e-5(e)). The "goals" of this administrative exhaustion requirement are "ensur[ing] that the employer is put on notice of the alleged violations, . . . thereby giving it a chance to address the alleged discrimination prior to litigation" and "plac[ing] the resolution of employment discrimination disputes initially in the hands of the EEOC[,] . . . encouraging quicker, less formal, and less expensive resolution of disputes." *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (internal citations and quotation marks omitted). Consequently, the plaintiff must exhaust each discrete claim of discrimination, and for purposes of determining exhaustion, "[t]he . . . charge [of discrimination form] defines the scope of the plaintiff's right to institute a civil suit." *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). "At the same time, however, the exhaustion requirement should not become a tripwire for hapless plaintiffs[,] . . . [and] we may not erect insurmountable barriers to litigation out of overly technical concerns." *Sydnor*, 681 F.3d at 594. Accordingly, a plaintiff may advance administrative claims in a subsequent civil suit that "are reasonably related to [the plaintiff's] EEOC charge and can be expected to follow from a reasonable administrative investigation[.]" *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). Stated differently, "[t]he touchstone for exhaustion is whether the

plaintiff's administrative and judicial claims are reasonably related, . . . not [whether they are] precisely the same[.]" *Sydnor*, 681 F.3d at 595.

Courts in the Fourth Circuit have applied these precepts to find that when a claim raised in a civil suit involves a different type of unlawful employment practice than the one described in the charge, the claim is not exhausted. *See, e.g., Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300-01 (4th Cir. 2009) (finding that claims of age, sex, and race discrimination were not exhausted where a plaintiff only checked a box for retaliation in her charge), *abrogated on other grounds by Fort Bend Cty., Tex.*, 139 S. Ct. 1843 (2019); *Bryant*, 288 F.3d at 132-33 (finding that claims of sex and color discrimination were not exhausted where a charge alleged only race discrimination). Conversely, the Fourth Circuit has found that varied allegations within the same type of unlawful employment practice are exhausted in some circumstances. *See Sydnor*, 681 F.3d at 594 (finding exhaustion "where both the administrative complaint and formal litigation concerned 'discriminat[ion] in promotions' but involved different aspects of the 'promotional system,' *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981), and where both the EEOC charge and the [federal] complaint included claims of retaliation by the same action, but involved different retaliatory conduct.") (citing *Smith*, 202 F.3d at 248).

Here, in the charge of discrimination form, when presented with a number of categories for the basis of the alleged discrimination, including disability discrimination, the plaintiff only checked the "national origin" box (doc. 1-2 at 3). Further, in the "particulars" section of the charge of discrimination, the plaintiff stated:

> I began my employment with BMW MANUFACTURING CO., LLC as an Associate Robot Tech on August 26, 2015. On September 27, 2019, I was told by Jeff Bart, Manager, American that I do not have an ?Greer accent? after my coworker told me that she hated my accent. I complained to human resources and told them I was going to complain to the EEOC. My coworker falsely accused me o[f] yelling at her and pushing her and I was sent home pending investigation on September 27, 2019. On October 9, 2019, I was discharged. There was no proof that I had did so and I even provided medical proof that I would have hurt myself if I pushed her d[ue]

> to my medical condition.  I appealed my discharge, but it was upheld on October 23, 2019.
>
> I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, due to my nation origin, European.

(*Id.*).

Based on a plain reading of the charge, the undersigned finds that the plaintiff did not present any allegations of disability discrimination, and thus, his subsequent disability discrimination claim in the instant matter is not exhausted.  As set out above, in the charge, the plaintiff only checked the box for national origin discrimination when presented with the option of also checking a box for disability discrimination.  Further, in the "particulars" section, the plaintiff described his complaint to the defendant's human resources department due to comments about his accent; his termination due to a co-worker accusing  him of yelling at her and pushing her despite a lack of "proof"; and a conclusory statement that, in light of the above claims, he believed that he was discriminated against "due to [his] national origin, European."   Additionally, disability discrimination is a different type of unlawful employment practice than that alleged in his charge, national origin discrimination, a circumstance in which the Fourth Circuit has found no exhaustion.  *See, e.g., Jones*, 551 F.3d at 300-01; *Bryant*,  288 F.3d 132-33.  Moreover, while the plaintiff argues that he raised the issue of disability discrimination in his charge because he mentioned the words "medical condition" (doc. 24 at 3-4), he did not discuss his medical condition in the context of a complaint of disability discrimination.  Rather, he made this reference in disputing his co-worker's allegations that he pushed her and noting that his medical condition would have resulted in him injuring himself had he actually done so.   Therefore, the undersigned finds that the plaintiff's allegations in his charge are insufficient to render his subsequent disability discrimination claim in federal court "reasonably related" to the charge.

In addition, the plaintiff argues that he exhausted his administrative remedies because the EEOC has "been supplied with reasonable amount of information to do

investigation, based on national origins and disability" (doc. 24 at 3). To support this argument, the plaintiff references a statement that he attached to his complaint that appears to have been submitted to the EEOC at some point (doc. 28 at 1). In that statement, the plaintiff discussed disability discrimination (doc. 1-1 at 1-7). However, the Fourth Circuit Court of Appeals has rejected a similar argument in *Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401 (4th Cir. 2013). In *Balas*, a *pro se* plaintiff communicated with the EEOC regarding her potential claims by meeting with the EEOC, submitting an intake questionnaire, and submitting letters. *Id.* at 405. The EEOC then prepared a charge that did not include all of her allegations. *Id.* Subsequently, the plaintiff sued in district court, alleging claims that were communicated to the EEOC but not included in her EEOC charge, and the district court found that the plaintiff had not exhausted these claims. *Id.* On appeal, the plaintiff argued that the district court should have considered the claims that she communicated to the EEOC and that "she should not be penalized for the EEOC's 'negligence' . . . ." *Id.* at 407-08. The Fourth Circuit, however, affirmed the district court, iterating that "[t]he intake questionnaire and the letters [the plaintiff] submitted to the EEOC cannot be read as part of her formal discrimination charge[,]" "we are not at liberty to read into administrative charges allegations they do not contain[,]" and courts "may look only to the charge filed with that agency." *Id.* at 408-09. Likewise, here, the undersigned may not consider claims that the plaintiff may have raised to the EEOC at some point but were not included in the charge.

The plaintiff also notes his difficulty with working with government agencies due to the "hardship that is caused by current and or recent past's pandemic situation and its affect on working order of government or administrative agencies" and argues that he asked the EEOC "to do investigation based on national origins and disability, [but] they (EEOC) replied back on one of phone calls that only one of those discrimination bases will be used" (doc. 24 at 3-4). Moreover, the plaintiff contends that the final version of his charge of discrimination form was prepared and/or edited by an EEOC representative (doc. 24 at 3). To support this argument in his response to the defendant's motion to dismiss,

the plaintiff references an email he received from an EEOC employee (doc. 24 at 4).  The plaintiff also attached the email to his response (doc. 24-1 at 1). The undersigned has not considered this document, as it is a matter outside of the pleadings.  Fed. R. Civ. P. 12(d). Nevertheless, even assuming that the plaintiff asked the EEOC to do an investigation based on disability discrimination, such claim was, in fact, not included in the final charge signed by the plaintiff.  As set out above, in subsequent civil lawsuits, "a federal court may only consider those allegations included in the EEOC charge," and courts "are not at liberty to read into administrative charges allegations they do not contain." *Balas*, 711 F.3d at 401, 408.  Therefore, the undersigned finds that the plaintiff has not administratively exhausted his disability discrimination claim and recommends that the district court grant the defendant's motion to dismiss the plaintiff's disability discrimination claim.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the undersigned recommends that the defendant's partial motion to dismiss pursuant to Rue 12(b)(6) (doc. 16) be granted as to the plaintiff's disability discrimination claim and be denied as to the plaintiff's retaliation claim.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

June 17, 2021
Greenville, South Carolina

**The attention of the parties is directed to the important notice on the next page.**

9

### *Notice of Right to File Objections to Report and Recommendation*

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
300 East Washington Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).